IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| TALBOT UNDERWRITING LIMITED,<br><br>    Plaintiff,<br><br>  v.<br><br>NUTRA FOOD INGREDIENTS, LLC; *et al.*,<br><br>    Defendants. | 2:24-cv-258 |

## OMNIBUS MEMORANDUM ORDER ON PENDING MOTIONS TO DISMISS

### J. Nicholas Ranjan, United States District Judge

There are three pending motions before the Court: (1) Total Food Packaging, LLC's motion to dismiss Talbot Underwriting Limited's claim for attorneys' fees (ECF 9); (2) AusVita Nutrition, Inc.'s motion to dismiss Nutra Food's third-party complaint (ECF 27); and (3) Collagensei Inc.'s motion to dismiss Nutra Food's third-party complaint. ECF 41. All motions have been fully briefed and are ready for disposition. The Court issues this omnibus order resolving the motions.

### BACKGROUND

Talbot Underwriting Limited, as subrogee of Bakery Barn, LLC, brought a complaint alleging breach of contract, breach of express warranty, breach of implied warranty of fitness for a particular purpose, breach of implied warranty of merchantability, and negligence against Nutra Food Ingredients, LLC, and alleging negligence against Total Food Packaging, LLC. ECF 5-2. Total Food timely removed the case to this Court. ECF 5.

Bakery Barn manufactures protein bars that contain hydrolyzed collagen. ECF 5-2, ¶¶ 12-13. Nutra Food was Bakery Barn's primary collagen supplier. *Id.* at ¶ 14. In April 2022, Bakery Barn received a shipment of collagen from Nutra Food and used it in its protein bars. *Id.* at ¶¶ 38-39. Bakery Barn

employees noticed that there were plastic pieces in finished protein bars, and after an investigation, Bakery Barn discovered that the plastic pieces (as well as other foreign objects) were coming from the collagen supplied by Nutra Food. *Id.* at ¶¶ 40-45. Nutra Food had recently found a new collagen supplier, which supplied collagen that was a different texture than the collagen it had received from its previous supplier. *Id.* at ¶ 53. Because the collagen was a different texture, Nutra Food had used Total Food as a "blender" to blend the collagen from the old supplier with the collagen from the new supplier to achieve the right texture. *Id.*

After Talbot filed its complaint, Nutra Food filed an answer asserting a crossclaim against Total Food. ECF 7. Nutra Food asserts in its crossclaim that Total Food is liable to Nutra Food for contribution or indemnification because of Total Food's role in blending the collagen. *Id.* at p. 29, ¶¶ 1-3. Nutra Food also filed a third-party complaint against AusVita, alleging that AusVita is liable to Nutra Food through indemnification because AusVita sold the contaminated collagen to Nutra Food. ECF 8, ¶¶ 4-5. Finally, Nutra Food filed a third-party complaint against an entity that it refers to as "Collagensei/Gensei Global Industries" asserting that Collagensei/Gensei Global Industries is liable to Nutra Food for supplying the contaminated collagen. ECF 32.

Three parties filed motions to dismiss. Total Food filed a motion to dismiss Talbot's claim for attorneys' fees. ECF 9. AusVita filed a motion to dismiss Nutra Food's third-party complaint against it for failure to join an indispensable party under Rule 19 and failure to state a claim. ECF 27. And "Collagensei Inc." filed a motion to dismiss Nutra Food's third-party complaint against "Collagensei/Gensei Global Industries" for lack of personal jurisdiction and failure to state a claim. ECF 41.

## **DISCUSSION & ANALYSIS**

**I.  Total Food's motion to dismiss Talbot's claim for attorneys' fees (ECF 9).**

Total Food argues that Talbot's claim for attorneys' fees should be dismissed because Talbot doesn't allege any "statute, agreement, or established exception that would permit" it to recover attorneys' fees from the sole count of negligence against Total Food. ECF 9, p. 2. Talbot argues in response that (1) the motion is premature; and (2) Rule 12(b)(6) is not the proper procedural vehicle for dismissing a prayer for relief. ECF 15. The Court agrees with Total Food.

To begin with, contrary to Talbot's assertions, Total Food's motion is not premature and is procedurally proper because "a Rule 12(b)(6) motion is the appropriate vehicle for seeking dismissal of a request for attorney's fees that a party contends are not recoverable." *Pods Enterprises, LLC v. Almatis, Inc.*, No. 16-993, 2016 WL 7440276, at *2 (W.D. Pa. Dec. 27, 2016) (Mitchell, M.J.); *China Max, Inc. v. S. Hills CN LLC*, No. 14-211, 2015 WL 3407869, at *3 (W.D. Pa. May 27, 2015) (Bissoon, J.) ("Traditionally, when a plaintiff seeks damages that are not recoverable, a defendant will move to dismiss the prayer for that particular relief under Federal Rule of Civil Procedure 12(b)(6)").

Under Pennsylvania law "a litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, a clear agreement of the parties, or some other established exception." *Trizechahn Gateway LLC v. Titus*, 976 A.2d 474, 482-83 (Pa. 2009). Here, Talbot alleges only a tort claim and does not point to any of the established exceptions for recovery of attorneys' fees.

As such, the Court grants Total Food's motion and dismisses Talbot's request for attorneys' fees as to the negligence claim against Total Food.

**II.  AusVita's motion to dismiss Nutra Food's third-party complaint (ECF 27).**

Nutra Food filed a third-party complaint against AusVita, asserting claims for

indemnification and contribution. ECF 8, ¶ 10. AusVita moved to dismiss Nutra Food's third-party complaint, arguing that it should be dismissed because: (1) Nutra Food failed to join a necessary or indispensable party (*i.e.*, Collagensei/Gensei Global Industries) under Rule 19; and (2) Nutra Food's claims of negligence and strict liability are barred by the economic loss doctrine. ECF 28, pp. 4-7. The Court denies the motion for the following reasons.

### A.     Failure to join a party under Rule 19.

AusVita first moves to dismiss on the basis that Nutra Food was obligated to sue the collagen supplier higher up in the chain—*i.e.*, the entity that supplied the collagen to AusVita, who then, in turn, supplied it to Nutra Food. That supplier was Collagensei/Gensei Global Industries, and AusVita argues that Collagensei/Gensei Global Industries was a necessary or indispensable party under Federal Rule of Civil Procedure 19. The Court disagrees.

Rule 19 provides that the joinder of certain parties is necessary if their joinder is feasible, specifically:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). Only if a court determines that a party's joinder is necessary, but not feasible, must the Court decide "whether the absent parties are 'indispensable' under Rule 19(b)." *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007). "If a court finds that a party is not 'necessary' to the proceedings, the party is, by definition, not 'indispensable' to the action." *Mallalieu-Golder Ins. Agency, Inc. v. Exec. Risk Indem., Inc.*, 254 F. Supp. 2d 521, 525 (M.D. Pa.

2003).

The first inquiry under Rule 19(a)(1)(A) is whether complete relief can be afforded among the parties already in the case. *Angst v. Royal Maccabees Life Ins. Co.*, 77 F.3d 701, 705 (3d Cir. 1996) ("Completeness is determined on the basis of those persons who are already parties, and not as between a party and the absent person whose joinder is sought."). The second inquiry under Rule 19(a)(1)(B)(i) and (ii) is whether disposition of the action without the absent party may impair or impede the party's ability to protect its interest or lead to inconsistent judgments. Fed. R. Civ. P. 19.

Here, AusVita states that "the failure of [Collagensei Global Industries] to be joined into the case would essentially mean this Court could not ultimately provide complete relief between the current parties, as it is patently clear that [Collagensei Global Industries] stands in the best position to address all issues relating to design, manufacturing, packaging, labeling, and shipping of the alleged contaminated collagen in question." ECF 28, pp. 4-5.

This argument fails for two reasons. First, there is no reason the Court cannot afford complete relief between the parties already in the case. Collagensei/Gensei Global Industries, if added, would simply be a joint tortfeasor. *Bailey-P.V.S. Oxides, LLC v. S & K Packaging, Inc.*, No. 8-1596, 2009 WL 3294862, at *2 (W.D. Pa. Oct. 13, 2009) (Ambrose, J.) ("[A] person suffering damages due to a defective product may sue and recover from anyone in the chain of distribution; those in the chain are joint tortfeasors."). And "[i]t is well-established that not all joint tortfeasors must be joined as defendants in a single lawsuit." *Alulis v. Container Store, Inc.*, No. 19-2564, 2020 WL 2556946, at *5 (E.D. Pa. May 20, 2020); *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990); *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 409 (3d Cir. 1993) ("'The mere fact, however, that Party A, in a suit against Party B, intends to introduce evidence that will indicate that a non-party, C, behaved improperly does

not, by itself, make C a necessary party.'" (quoting in parenthetical *Pujol v. Shearson/American Express, Inc.*, 877 F.2d 132, 136 (1st Cir. 1989))); *Freedom Int'l Trucks, Inc. of New Jersey v. Eagle Enterprises, Inc.*, No. 97-4237, 1998 WL 695397, at *3 (E.D. Pa. Oct. 5, 1998) ("[I]t is well established that Rule 19 does not require the joinder of joint tortfeasors, nor principals and agents, nor persons against whom the defendant may have a claim for contribution.").

This is so because the inquiry under Rule 19(a)(1)(A) focuses on whether the Court can afford complete relief between the parties that are already in the case. *Angst*, 77 F.3d at 705. Because Talbot and all other defendants already joined in this case "will effectively resolve *their* entire controversy despite [Collagensei/Gensei Global Industries's] absence[,]" Collagensei/Gensei Global Industries is not a necessary party under Rule 19(a)(1)(A). *Incubadora Mexicana, SA de CV v. Zoetis, Inc.*, 310 F.R.D. 166, 171 (E.D. Pa. 2015) (emphasis original) (denying motion to dismiss for failure to join a party under Rule 19 because complete relief could be afforded between plaintiff and American vaccine companies without joining Mexican vaccine companies which defendants claimed were in the chain of distribution).

Second, Collagensei/Gensei Global Industries's interests will not be impeded nor will an existing party be subject "to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B)(i) and (ii). Again, as noted above, a finding of liability as to any or all defendants would not preclude a liable defendant from bringing a later contribution claim against Collagensei/Gensei Global Industries if that defendant so chose. *See Incubadora Mexicana, SA de CV*, 310 F.R.D. at 171 (holding that third-party entities were not "necessary because Defendants could—should they be found liable— theoretically seek contribution from those entities in a later lawsuit."). Additionally, Collagensei/Gensei Global Industries hasn't otherwise claimed an interest in this case and "the fact that another court may assign liability differently from this Court

does not subject [any party] to multiple or inconsistent obligations within the meaning of subsection (a)(1)(B)(ii)." *Incubadora Mexicana, SA de CV*, 310 F.R.D. at 172.

For these reasons, Collagensei/Gensei Global Industries (or any other upstream collagen supplier, for that matter) is not a necessary or indispensable party under Rule 19, and any failure to include that entity is not grounds for dismissal. *Gen. Refractories Co.*, 500 F.3d at 313 ("[A] holding that joinder is compulsory under Rule 19(a) is a necessary predicate to a district court's discretionary determination under Rule 19(b) that it must dismiss a case because joinder is not feasible[.]").[1]

### B. Economic loss doctrine.

AusVita also moves to dismiss Nutra Food's complaint based on the economic loss doctrine. ECF 27. Nutra Food "alleges that AusVita is liable for [Talbot's] claims and therefore liable to [Nutra Food], including under theories of breach of contract, breach of express warranties, breach of implied warranties of merchantability and/or fitness for a particular purpose, negligent, and strict products liability." ECF 36, pp. 2-3. Nutra Food "also asserts that AusVita is solely and/or directly liable to [Talbot] based on the same legal theories." *Id.* at 3. AusVita argues that these claims are barred by the economic loss doctrine.

Under Pennsylvania law, "the economic loss doctrine provide[s] that no cause of action [can] be maintained in tort for negligence or strict liability where the only injury was 'economic loss'—that is, loss that is neither physical injury nor damage to tangible property." *2-J Corp. v. Tice*, 126 F.3d 539, 541 (3d Cir. 1997). "Where a

---

[1] After Nutra Food filed its third-party complaint against Collagensei/Gensei Global Industries (ECF 32), AusVita and Nutra Food filed a stipulation through which AusVita withdrew the portion of its motion to dismiss related to failure to join a required party under Rule 19. ECF 34. Stipulations are, of course, not binding on the Court, and the Court finds it furthers judicial economy in this case to reject the stipulation and address this aspect of the pending motion.

plaintiff's only alleged damage is a diminution in the value of a product plaintiff has purchased, Pennsylvania law says that plaintiff's redress comes from the law of contract, not the law of tort." *Martin v. Ford Motor Co.*, 765 F. Supp. 2d 673, 684 (E.D. Pa. 2011) (cleaned up).

While "negligence and strict liability theories do not apply in an action between commercial enterprises involving a product that malfunctions where the only resulting damage is to the product itself[,]" *REM Coal Co. v. Clark Equip. Co.*, 563 A.2d 128, 134 (Pa. Super. Ct. 1989), the economic loss doctrine does not bar recovery when there are damages for property other than the product itself. *Tennis v. Ford Motor Co.*, 730 F. Supp. 2d 437, 449 (W.D. Pa. 2010) (McVerry, J.) (denying motion to dismiss negligence and strict liability claims when plaintiff suffered a loss of personal property in addition to the vehicle); *see New Hampshire Ins. Co. v. Dielectric Commc'ns, Inc.*, 872 F. Supp. 2d 458, 462 (E.D. Pa. 2012) (denying motion to dismiss when there was a factual dispute over whether plaintiff could show damage to "other property"). Damage to "inventory and raw materials" is not covered under the economic loss doctrine. *Keystone Foods, LLC v. Atl. Dry Ice, LLC*, No. 15-756, 2015 WL 4130686, at *7 (E.D. Pa. July 9, 2015) (denying motion to dismiss because plaintiff's complaint sufficiently alleged damage to other property in the form of needing to destroy contaminated vats of raw chicken).[2]

Because Nutra Food's negligence and strict liability claims against AusVita flow from Talbot's claims against Nutra Food, the Court must look to whether Talbot

---

[2] The Pennsylvania Supreme Court recently addressed the economic loss doctrine in *Dittman v. UPMC*, 649 Pa. 496 (Pa. 2018). One court has observed that "the central question in the application of the economic loss doctrine under *Dittman* now seems to be whether a duty between the parties was created by a contract, as opposed to in tort—not merely whether the plaintiff suffered solely economic injuries." *Amig v. Cnty. of Juniata*, 432 F. Supp. 3d 481, 488 (M.D. Pa. 2020). However, after *Dittman*, Pennsylvania federal courts continue to analyze products liabilities claims under the framework described above. *See Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Ford Motor Co.*, No. 23-1857, 2024 WL 4339986, at *3 n.2 (E.D. Pa. Sept. 26, 2024).

(as subrogee of Bakery Barn) has sufficiently alleged damages to property other than the contaminated collagen. *EQT Prod. Co. v. Aspen Flow Control, LLC*, No. 20-295, 2020 WL 6545998, at *3 (W.D. Pa. Nov. 6, 2020) (Ranjan, J.) (declining to apply economic loss doctrine because the primary plaintiff was "plausibly seeking compensation for separate property damage").

Talbot alleges that Bakery Barn was "forced to destroy approximately 3.5 million individual protein bars" that contained the contaminated collagen and "expended over 105 manhours in addressing the contaminated collagen[.]" ECF 5-2, ¶¶ 76-77. Drawing all reasonable inferences in favor of Nutra Food (and Talbot), these allegations plausibly show that Talbot sustained losses and damages to other property beyond the loss of the raw material collagen. As such, the Court denies AusVita's motion to dismiss Nutra Food's strict liability and negligence claims.

### III. Collagensei Inc.'s motion to dismiss Nutra Food's third-party complaint (ECF 41).

Collagensei Inc. filed a motion to dismiss Nutra Food's third-party complaint against Collagensei/Gensei Global Industries for failure to state a claim and lack of personal jurisdiction. ECF 41. The Court grants the motion for failure to state a claim. There are three problems with Nutra Food's claim.

The first and main problem with Nutra Food's claim here is that there is no such entity as "Collagensei/Gensei Global Industries." As Nutra Food's counsel concedes, that is a trade name or "doing business as" name. ECF 50, 12:1-6. That is not sufficient; the actual legal entity must be named. *See WorldScape, Inc. v. Sails Cap. Mgmt.*, No. 10-4207, 2012 WL 13028724, at *1 (D.N.J. Mar. 13, 2012) (granting leave to amend to name correct party when plaintiff originally named entity that did not exist); *see also* Fed. R. Civ. P. 15(c)(1) (allowing amendment and relation back if there is "a mistake concerning the proper party's identity.").

The second problem with the claim is if the actual entity is Gensei Global

Industries Co., Ltd., then, as the parties have represented to the Court, that is a Chinese entity, which must be named and then served through foreign process. Fed. R. Civ. P. 4(f) (describing rules for service of process on foreign entity).

And the third problem is if the proper entity to be named is "Collagensei Inc.," then Nutra Foods must, as its counsel concedes, proceed under an alter ego theory—and the complaint alleges no facts to support that. *See* ECF 32; ECF 50, 26:20-27:5.

For these reasons, the Court will grant the motion and dismiss Collagensei/Gensei Global Industries. This is without prejudice to Nutra Foods filing an amended third-party complaint to address the issues noted above.[3]

## CONCLUSION

Pursuant to the above, the Court hereby **ORDERS** as follows:

(1) Total Food's motion to dismiss Talbot's claim for attorneys' fees (ECF 9) is **GRANTED** and Talbot's claim for attorneys' fees is **DISMISSED** with prejudice;

(2) AusVita's motion to dismiss Nutra Food's third-party complaint (ECF 27) is **DENIED**;

(3) Collagensei Inc.'s motion to dismiss Nutra Food's third-party complaint (ECF 41) is **GRANTED** and Nutra Food's third-party complaint is **DISMISSED** without prejudice and with leave to amend. Any such amended third-party complaint must be filed by **April 8, 2025**.

********************

DATE: March 11, 2025						BY THE COURT:

								/s/ *J. Nicholas Ranjan*
								United States District Judge

---

[3] Given this ruling, the Court need not address Collagensei Inc.'s personal-jurisdiction argument.